733 A.2d 1044

**STATE of Maryland**

v.

**James T. BROWN, Jr.**

**No. 6, Sept. Term, 1999.**

Court of Appeals of Maryland.

July 28, 1999.

Ann N. Bosse, Asst. Atty. Gen. ( J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief), Baltimore, for petitioner.

Deborah Liu (William H. Murphy, Jr. & Assoc., on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and ROBERT L. KARWACKI (Retired, Specially Assigned), JJ.

BELL, Chief Judge.

We granted certiorari in the case *sub judice*, on the petition of the State, *see* 353 Md. 268, 725 A.2d 1067 (1999), to determine whether the Circuit Court for Baltimore City erred in refusing to dismiss the charges against James T. Brown, Jr., the respondent, where, although the postponement that resulted in a trial date beyond the 180 day period, mandated by Maryland Rule 4–271,[1] and its statutory counterpart, Maryland Code (1957, 1996 Repl.Vol.), Art. 27, § 591,[2] was found by

---

1. That rule reads in relevant part:

   "(a) *Trial Date in Circuit Court.*(1) The date for trial in the circuit court shall be set within 30 days after the earlier of the appearance of counsel or the first appearance of the defendant before the circuit court pursuant to Rule 4–213, and shall be not later than 180 days after the earlier of those events. When a case has been transferred from the District Court because of a demand for jury trial, and an appearance of counsel entered in the District Court was automatically entered in the circuit court pursuant to Rule 4–214(a), the date of the appearance of counsel for purposes of this Rule is the date the case was docketed in the circuit court. On motion of a party, or on the court's initiative, and for good cause shown, the county administrative judge or that judge's designee may grant a change of a circuit court trial date."

2. Maryland Code (1971, Repl Vol.1996), Article 27, § 591 provides:

   "(a) Setting the date.—The date for trial of a criminal matter in a circuit court:
   "(1) Shall be set within 30 days after the earlier of:

the administrative judge or his designee to be for good cause, sixteen months elapsed between the respondent's arraignment in the circuit court and his actual trial. In refusing to dismiss, the trial court reasoned that the administrative judge found good cause for each of the postponements, that none of those findings was an abuse of discretion and that the respondent did not establish that he was prejudiced by the delay. A contrary result was reached by the Court of Special Appeals, which reversed the judgment of the circuit court. That court held that, "under the circumstances of this case, the delay between postponement and ultimate trial date was inordinate, in violation of the requirements of Rule 4–271 and § 591." *Brown v. State*, 124 Md.App. 245, 247, 721 A.2d 269, 270 (1998). We shall reverse the judgment of the intermediate appellate court.

## I.

In February 1996, the respondent was arrested and charged with third degree sexual offense, fourth degree sexual offense, and assault. He was arraigned in the Circuit Court for Baltimore City on June 25, 1996, at which time his initial trial date of September 25, 1996 was set. On that date, both counsel were ready to proceed, but there was no judge available to hear the case. Consequently, the administrative judge, having found good cause to do so, rescheduled the trial for December 12, 1996. Because, on that date, the judge assigned to hear the case was involved in a continuing jury trial, the trial scheduled for that date was postponed by the

---

"(i) The appearance of counsel; or

"(ii) The first appearance of the defendant before the circuit court, as provided in the Maryland Rules; and

"(2) May not be later than 180 days after the earlier of those events.

"(b) Changing the date.—On motion of a party or on the court's initiative and for good cause shown, a county administrative judge or a designee of that judge may grant a change of the circuit court trial date.

"(c) Court rules.—The Court of Appeals may adopt additional rules of practice and procedure for the implementation of this section in circuit courts."

administrative judge, for good cause, and reset to February 18, 1997, a date beyond the 180 day limit. Trial did not proceed on February 18, however, for, once again, the judge to whom the case was assigned was involved in a continuing jury trial. Finding that reason sufficient good cause to postpone the trial, the administrative judge set a new trial date of March 5, 1997.

On March 5, 1997, in addition to the trial judge being involved in another trial, defense counsel was otherwise engaged. Therefore, good cause for postponement was found and the case was rescheduled for March 31, 1997, but not before the respondent had filed, and the court had denied, a motion to dismiss "criminal charges for violation of defendant's speedy trial, due process and *Hicks* rights." Unavailability of a courtroom and of the prosecutor due to maternity leave were the bases for the good cause finding resulting in the postponement of the March 31, 1997 trial date.

The next two trial dates, June 19, 1997, and July 11, 1997, were postponed because no judge was available to hear the case. On the next trial date, October 22, 1997, the prosecutor was informed that defense counsel was involved in another trial and, in reliance, called off its witnesses. The administrative judge found that to be good cause and, thus, postponed the trial to October 24, 1997; the respondent's trial commenced on October 28, 1997.

On none of the occasions prior to the critical postponement, the one that resulted in a trial date beyond the 180 day limit, did the respondent agree to a change in trial date under *State v. Hicks,* 285 Md. 310, 403 A.2d 356, *on motion for reconsideration,* 285 Md. 334, 403 A.2d 368 (1979). And, before the commencement of trial, the respondent renewed his motion to dismiss, again alleging that the statute and the rule, as well as his speedy trial rights had been violated. That motion having been denied, the case was presented to the jury, which returned verdicts of conviction of third degree sexual offense, fourth degree sexual offense, and common law assault. Following sentencing, the respondent noted an appeal to the

Court of Special Appeals. In that court, the respondent asserted that both his speedy trial rights under the United States Constitution and his rights under Maryland Rule 4–271 and § 591 were infringed. Finding merit in the respondent's argument as to the rule and the statute, the intermediate appellate court reversed the judgment of the trial court. It declined to reach the constitutional issues the respondent had raised, however. Acknowledging our previous case law, the Court of Special Appeals characterized the issue as, "whether there was inordinate delay between the pertinent postponement and the ultimate trial date necessitating dismissal of appellant's criminal charges." *Brown*, 124 Md.App. at 247, 721 A.2d at 270. It held that Rule 4–271 and § 591 were violated, reasoning:

> "Just as the State may not use the *nol pros* procedure as a vehicle to avoid the requirements of § 591 and Rule 4–271, the circuit courts may not avoid those requirements by assigning trial dates that have no practical meaning. In a case such as this, involving no extenuating circumstances whatsoever, the serial postponements of trial due to the unavailability of the court is the equivalent of the failure to assign any trial date. Thus, we will consider the length of delay between the critical postponement and the ultimate trial date. Under the particular circumstances of this case, and our holding is so limited, that delay was inordinate as a matter of law."

*Id.* at 257, 721 A.2d at 275. Thus, the court remanded the case to the trial court with instructions to dismiss the charges.

As indicated, the State sought certiorari, arguing essentially that "the Court of Special Appeals erred in analyzing the period of delay following the critical postponement by giving no deference to the administrative judge's good cause determinations and by otherwise treating the case as one where nothing was done following the critical postponement." Because we think it important that we clarify the application of the *Hicks* rule, where there is a delay in bringing the defendant to trial after the grant of a postponement, for good cause,

resulting in a trial date beyond the 180 day limit, we granted the State's petition.

To explain why it is that we side with the State, it is necessary that we revisit *Hicks* and *Frazier*, 298 Md. 422, 470 A.2d 1269 (1984),focusing particularly on their rationales, as well as those cases decided subsequent to *Frazier*, in which the boundaries of the extent of delay component of the good cause requirement were explored.

## II.

### a.

In *Hicks*, this Court gave effect to the Legislative intent, embodied in § 591 and recognized by this Court when it promulgated Maryland Rule 746, the predecessor of Rule 4–271, that cases in the circuit court be disposed of promptly, by holding "that Rule 746 is mandatory and that dismissal of the criminal charges is the appropriate sanction where the State fails to bring the case to trial within the 120–day period [then applicable] prescribed by the rule and where "extraordinary cause" [the then applicable standard] justifying a trial postponement has not been established." [3]  285 Md. at 318, 403

---

**3.**  We noted that "[section 591's] enactment manifested the legislature's recognition of the detrimental effects to our criminal justice system which result from excessive delay in scheduling criminal cases for trial and in postponing scheduled trials for inadequate reasons." *State v. Hicks*, 285 Md. 310, 316, 403 A.2d 356, 359 (1979). To highlight the problem underlying enactment of § 591, we quoted from *Guarnera v. State*, 20 Md.App. 562, 573–74 318 A.2d 243, 248–49 (1974):

"Postponement of cases from dates scheduled for trial is one of the major factors contributing to delay in the administration of justice, civil as well as criminal. Courts and court supporting services spend substantial time 'spinning their wheels', in rescheduling cases. Available court time is lost. The time of attorneys and witnesses is lost. Witnesses themselves are lost. Those who are not are put to severe inconvenience as well as actual loss, and end up in despair at the frustrations of being involved in the trial of a case in the courts. The very image of the judicial system is in serious jeopardy. Public confidence in the courts as instruments of the people is impaired. Judges and lawyers cannot blame the 'system', for they are the people who run that system.

A.2d at 360. To reach that result, we analyzed the statute and the rule, concluding that every postponement of a circuit court criminal trial date was required to be granted by the administrative judge or his designee and only upon a showing of the requisite cause. *See id.* at 315–18, 403 A.2d at 359–60. We were clear, however, as to the purpose of § 591 and Rule 746, which we stated was to set a time limit for the trial of a criminal case. *See id.* at 318, 403 A.2d at 360. Accordingly, we stated that the dismissal sanction was applicable only when the case was not tried within that time limit and not postponed in accordance with § 591 and Rule 746; it was inapplicable to violations of § 591 and Rule 746 which did not prevent the case from being tried within the prescribed time period. *See id.* at 318, 320, 403 A.2d at 360, 362. The *Hicks* Court also made clear that § 591 and Rule 746 were not intended to be codifications of the constitutional speedy trial right but stand "on a different legal footing." 285 Md. at 320, 403 A.2d at 361–62.

On *motion for reconsideration,* this Court confirmed and amplified its initial decision in *Hicks* and, in addition, held that it would be given prospective effect. It also identified two circumstances in which the dismissal sanction would not apply for a violation of the rule:

"First, in addition to the requirement that, absent extraordinary cause, criminal cases at the circuit court level be tried

---

"When the Legislature has expressed the will of the people [in § 591] by saying that the date established for the trial of a criminal case shall not be postponed except for extraordinary cause, and has denied all judges but the administrative head of the court authority to exercise even that curtailed power, the message should be loud and clear to the bench, the bar, parties, witnesses, and to the public, that trials must not and will not be postponed for ordinary reasons. "And all to whom this message has been sent must understand that it makes not the slightest difference whether a continuance requested is the fifth, the third, or the very first—the reasons for it must satisfy the administrative judge that they meet the test of extraordinary cause. All persons concerned with the trial of a criminal case in the courts of Maryland must be held to know that, barring good cause of an extraordinary nature, the case will go to trial on the date scheduled. And all persons concerned must be entitled to rely upon that knowledge." *Id.* at 316–17, 403 A.2d at 360.

within 120 days of the appointment or waiver of counsel or after the appearance of counsel under Rule 723, Rule 746 also requires that the act of setting this trial date be done within 30 days. Of course, as long as the case is tried within the 120–day deadline, the purpose of the rule and the statute upon which it is based, namely having the case tried promptly, will be accomplished, even if the setting of that trial date is not done within 30 days. In other words, the legislative purpose underlying § 591 and Rule 746 will in no way be advanced by holding that dismissal is the appropriate sanction for violation of the 30–day requirement. For this reason, we do distinguish between the 120–day requirement and the 30–day requirement. While the 30–day requirement is mandatory for those persons involved in setting the trial date, we hold that dismissal of the criminal case is not an appropriate sanction for violation of the 30–day provision.

"A second circumstance where it is inappropriate to dismiss the criminal charges is where the defendant, either individually or by his attorney, seeks or expressly consents to a trial date in violation of Rule 746. It would, in our judgment, be entirely inappropriate for the defendant to gain advantage from a violation of the rule when he was a party to that violation. In this respect, the situation is analogous to the well-established principle that a criminal defendant who seeks or expressly consents to a mistrial, even though the required "manifest necessity" standard for the mistrial may have been absent, cannot take advantage of his own act and prevent a retrial on double jeopardy grounds. *See, e.g., United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *United States v. Jorn,* 400 U.S. 470, 484–485, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *Jourdan v. State,* 275 Md. 495, 508, {*336} 341 A.2d 388 (1975); *Cornish v. State,* 272 Md. 312, 318–319, 322 A.2d 880 (1974)." *Id.* at 335–36, 403 A.2d at 369.

### b.

In *State v. Frazier,* 298 Md. 422, 470 A.2d 1269 (1984), interpreting *Hicks,* this Court concluded: "when there are

several orders by the administrative judge postponing a criminal trial, and one of those orders has the effect of postponing the trial beyond the 180–day deadline, it is the latter order with which a judge hearing a motion to dismiss is concerned. The critical order by the administrative judge, for purposes of the dismissal sanction, is the order having the effect of extending the trial date beyond 180 days." 298 Md. at 428, 470 A.2d at 1272. *See Dorsey v. State,* 349 Md. 688, 701, 709 A.2d 1244, 1250 (1998); *State v. Parker,* 347 Md. 533, 540–41, 702 A.2d 217, 220–21 (1995); *Rosenbach v. State,* 314 Md. 473, 478, 551 A.2d 460, 462 (1989).

This Court pointed out in *Frazier,* that "the requirement in § 591 and Rule 746 that there be "good cause" for a postponement of the trial date to a new date beyond the 180 day deadline has two components: 1. there must be good cause for not commencing the trial on the assigned trial date; 2. there must be good cause for the extent of the delay." *Frazier, supra,* at 448, 470 A.2d at 1282–83. The determination of good cause, we made clear, was entrusted to the sound discretion of the County Administrative judge, *see id.* at 450, 470 A.2d at 1283 (quoting *Guarnera v. State,* 20 Md.App. 562, 573, 318 A.2d 243, *cert. denied,* 272 Md. 742 (1974), quoted with approval in *Hicks,* 285 Md. at 317, 403 A.2d at 360), the exercise of which being subject to review only for abuse. *See id.* at 450, 470 A.2d at 1284 (citing *Hughes v. State,* 288 Md. 216, 229, 421 A.2d 69 (1980)). The burden of demonstrating a clear abuse of discretion is on the party challenging the discretionary ruling on the postponement motion. *See Hughes v. State, supra,* 288 Md. at 229, 421 A.2d 69; *Jackson v. State,* 214 Md. 454, 459, 135 A.2d 638, 640 (1957). Accordingly, we held that, "with regard to both components of the "good cause" requirement in § 591 and Rule 746, the trial judge (as well as an appellate court) shall not find an absence of good cause unless the defendant meets the burden of demonstrating either a clear abuse of discretion or a lack of good cause as a matter of law." *Frazier,* 298 Md. at 454, 470 A.2d at 1286. When the extent of the delay component of the good cause determination is at issue, the question for the reviewing court

is "[whether] the period of time until a new trial date, represented a clear abuse of discretion." *Id.* at 462, 470 A.2d at 1290.

Only the extent of the delay component of the good cause requirement is implicated in this case; however, we are required to clarify whether the applicable period is from the date of the critical postponement to the date of the reset trial date or from the date of the critical postponement to the actual commencement of trial. The State argues that it is the former, noting the emphasis in the cases is on the postponement that results in a change of trial date beyond the 180 day limit, and on the purpose of the applicable rule and statute. The respondent, on the other hand, maintains that it is the latter, finding support for that position in *Rosenbach.*

c.

Shortly after *Frazier* was decided, we issued our opinion in *Farinholt v. State,* 299 Md. 32, 472 A.2d 452 (1984). There, the defendant was arraigned in the circuit court on May 6, 1981, therefore, the 180 day period for trying his case expired on November 2, 1981. *See id.* at 34, 472 A.2d at 453. His first trial date, set for August 10, 1981, was postponed to September 23, 1981. *See id.* When the case was called for trial on that date, the defendant's attorney, in the defendant's presence, addressed the court as follows:

"We formally ask the Court to continue this case, and for reasons we would indicate to the Court that it came to my attention very late yesterday that there was another witness who was unavailable, who I would believe to be absolutely essential in preparation of his defense. I would anticipate the witness probably will be available some time next week. For that reason I think that it is incumbent on me on Mr. Farinholt's behalf to ask for a continuance. We would be waiving our right to trial within 180 days under the *Hicks* decision, also waive our right to speedy trial in the interim period, as long as it takes to set the case back in. I am going down to assignment and set the case in as quickly as

possible; however, I doubt very seriously the case will be able to be set within the 180 days."

*Id.* at 35–36, 472 A.2d at 453. Subsequent questioning by the court demonstrated that the absent witness was the defendant's co-defendant, who had been tried separately, was awaiting sentence and refused to testify until he had been sentenced, and that the defendant agreed with counsel's representation. *See id.* at 35, 472 A.2d at 453. On October 27, the next trial date, the defendant again requested a postponement, noting the continued unavailability of his co-defendant as a witness. *See id.* at 36–37, 472 A.2d at 454. He also acknowledged ' "that previously we waived *Hicks* and speedy trial, [and] indicated that the new trial date would probably be in February 1982," *id.,* a date beyond the 180 day limit. The court granted the postponement and scheduled the trial for November 18, 1981. Trial did not proceed on that date, however, because the State sought and received a postponement. *See id.* at 37, 472 A.2d at 454. The case was finally called for trial on January 8, 1982, at which time the defendant moved to dismiss for violation of § 591 and Rule 4–271, which the trial court granted. *See id.* at 38, 472 A.2d at 454–55.

Aggrieved by the decision of the Court of Special Appeals, which reversed the judgment of the circuit court, the defendant filed a petition for certiorari, which we granted. He argued, in this Court, "that § 591 and Rule 746, including the dismissal sanction for violation, are fully applicable to subsequent postponements even though an earlier order postponing the trial beyond the 180–day deadline was in compliance with the statute and rule." *Id.* at 39, 472 A.2d at 455. This Court found it unnecessary to review the merits of the defendant's challenge in view of the fact that the defendant had sought and expressly consented to a trial date in violation of § 591 and Rule 746, *see id.* at 40–41, 472 A.2d at 455–56, explaining:

"We need not decide whether the postponement on October 27, 1981, complied with § 591 and Rule [4–271]. If it be assumed arguendo that the October 27th postponement violated the statute and rule, either on the theory that the

postponement was not effected by the administrative judge or his designee, or on the theory that good cause was lacking, the defendant could gain no advantage from such violation."

*Id.* Nevertheless, we did address the issue that is presented in the case *sub judice,* as to which we noted that "we agree with the State and the Court of Special Appeals that, after a case has already been postponed beyond the 180–day period, either in accordance with § 591 and Rule 746, or upon the defendant's motion, or with the defendant's express consent, the dismissal sanction has no relevance to subsequent postponements of the trial date unless the defendant's constitutional speedy trial right has been denied." *Id.* at 40, 472 A.2d at 456. We concluded by reiterating what we said in *Frazier,* 298 Md. at 428, 470 A.2d at 1269, with respect to the applicability of the dismissal sanction:

"The dismissal sanction for violating § 591 and Rule 746 should only be applied when it is needed, as a prophylactic measure, to further the purpose of trying a circuit court criminal case within 180 days. Once a postponement beyond the 180–day deadline is ordered in accordance with § 591 and Rule 746 (or upon the defendant's motion or with his express consent), it would not further this purpose to utilize the dismissal sanction for subsequent violations of the statute and rule. The sanctions for such subsequent violations must be ones of internal judicial administration, relating to circuit court personnel and/or procedures."

299 Md. at 41, 472 A.2d at 456 (citing *Hicks,* 285 Md. at 335, 403 A.2d at 368).

### d.

Also relevant and consistent with the *Hicks-Frazier-Farinholt* approach are *State v. Bonev,* 299 Md. 79, 472 A.2d 476 (1984) and *State v. Brookins,* 299 Md. 59, 472 A.2d 465 (1984). In *Brookins,* the 180 day period expired on February 10, 1982, the defendants, charged with armed robbery and other offenses, having been arraigned in the circuit court, and counsel's appearance having been entered, on August 14, 1981.

*See Brookins,* 299 Md. at 60, 472 A.2d at 466. On November 12, 1981, the first trial date, the parties were prepared to proceed, but no court was available. *See id.* Consequently, the designated administrative judge rescheduled the case for February 24, 1982, fourteen days beyond the 180 day period. *See id.* at 61, 472 A.2d at 466. The case was postponed again on February 24 because there was no courtroom available; however, it was placed on the "move list" and later called for trial on March 8, 1982. *See id.* The defendant's motion to dismiss for violation of the *Hicks* rule was granted by the trial judge, and the Court of Special Appeals affirmed, holding that there was good cause for the initial postponement, but not the February postponement. *See id.* Reversing, we reiterated our holding in *Frazier,* that the "critical order by the administrative judge, for purposes of the dismissal sanction, is the order having the effect of extending the trial date beyond 180 days." *Id.* (quoting *Frazier,* 298 Md. at 428, 470 A.2d at 1272). Noting that the critical date which resulted in a trial date beyond the 180 day deadline was November 12, the date of the initial postponement, we concluded, as we had in *Farinholt,* that " "after a case has already been postponed beyond the 180–day period, either in accordance with § 591 and Rule 746, or upon the defendant's motion, or with the defendant's express consent, the dismissal sanction has no relevance to subsequent postponements of the trial date unless the defendant's constitutional speedy trial right has been denied." *Id.* at 40, 472 A.2d at 456 (quoting *Farinholt,* 299 Md. at 40, 472 A.2d at 456).

At issue in *Bonev* was the length of the delay between the initial trial date, November 16, 1981 and the actual trial date, March 1, 1982, which was beyond the 180 day limit. *See Bonev,* 299 Md. 79, 81, 472 A.2d 476. The designated administrative judge had found good cause for the postponement "due to an excess buildup of cases awaiting trial with no courtroom available [and][t]here are currently 14 cases already pending on the list to be moved to the first available court." *Id.* Notwithstanding that there was a subsequent postponement due to defense counsel's unavailability, we focused only on the

postponement resulting in a trial date beyond the 180 day limit and relied on the principles set forth earlier in *Frazier, supra*, to hold that the critical postponement did not constitute a clear abuse of discretion, warranting dismissal. *See id.* at 79, 472 A.2d at 476.

## III.

### a.

█ Mindful of the cases mentioned heretofore, the respondent argues that this Court's decision in *Rosenbach*, changed the test for determining when a violation of Rule 4–271 occurs. We find the respondent's contention to be without merit. Indeed, we view the holding in *Rosenbach* as entirely consistent with the *Hicks-Frazier-Farinholt* line of cases.

In *Rosenbach*, the only issue addressed was: "When a judge postpones, within the prescribed 180 days, but delegates the assignment of a new trial date to Central Assignment [Office] (CAO) which assigns a trial date beyond the 180 day limit, does the original postponement qualify as a good cause postponement under Rule 4–271(a) and Md.Ann.Code art. 27, § 591?" 314 Md. 473, 476, 551 A.2d 460, 461. The defendant argued that "the requisite procedures were not followed [in granting the postponement] because neither Judge Arabian nor any other judge took an active part in seeing that the case was rescheduled .... that the postponement ordered by Judge Arabian did not carry the case beyond 180 days; rather, the CAO's failure to reset the case promptly caused that problem," *id.* at 477–78, 551 A.2d at 462, and that "the purpose of the statute and the rule is to require 'dismissal of cases not tried within the 180 days that have not been postponed properly.' " *Id.* at 478, 551 A.2d at 462. We found those arguments to be meritless. *See id.* In so doing, we acknowledged, ' "[t]he critical order by the administrative judge, for purposes of the dismissal sanction, is the order having the effect of extending the trial date beyond 180 days." ' *Id.* (quoting *Frazier*, 298 Md. at 428, 470 A.2d at 1272). We further acknowledged "that the postponing judge

need not make a specific finding that the postponement will of necessity carry the case beyond the 180 days," *id.* (citing *Goins v. State*, 293 Md. 97, 442 A.2d 550 (1982)), or "personally reset or cause the case to be reset for a particular date." *Id.* at 479, 551 A.2d at 463.

The *Rosenbach* Court then observed:

"Once that occurs, the question is no longer whether there was a postponement for good cause. The issue then becomes the length of the delay. A case postponed for good cause may yet run afoul of the statute and rule if, after a valid postponement, there is inordinate delay in bringing the case to trial. *See, e.g., State v. Bonev,* 299 Md. 79, 80–81, 472 A.2d 476, 476–477 (1984); *Carey [v. State],* 299 Md. [17] at 22–23, 472 A.2d [444] at 447 [1984]; *Frazier,* 298 Md. at 448, 470 A.2d at 1282–1283. The purpose of the rule is to promote the expeditious disposition of criminal cases, *Frazier,* 298 Md. at 456–457, 470 A.2d at 1287, and this purpose is not served if, after a good cause postponement, nothing further is done to achieve that goal. Thus, the dismissal sanction may once again be invoked if, after a good cause postponement, *trial is not begun with reasonable promptness. See generally Frazier, supra.* But the burden of showing that the post-postponement delay is inordinate, in view of all the circumstances, is on the defendant. *State v. Brookins,* 299 Md. 59, 62, 472 A.2d 465, 467 (1984); *Frazier,* 298 Md. at 454, 470 A.2d at 1286. *Rosenbach* has not met that burden here; indeed, he has not attempted to do so."

*Id.* at 479, 551 A.2d at 463. (Emphasis added). Later, we added:

"The policy of the rule, of course, demands that both the court and prosecution take appropriate steps to assure that there is no inordinate delay. *See State v. Robertson,* 72 Md.App. 342, 350, 529 A.2d 847, 851 (1987); *see also* Md. Rule 1200 d2(ii). It is for this reason that a case must be dismissed if inordinate delay is found. But this does not mean that a postponing judge must take an active part in the rescheduling of cases. It does mean that the official

who undertakes to reset the case (administrative judge, designee, or CAO) must make certain that *the commencement of the trial is not inordinately delayed.*" *Id.* at 480, 551 A.2d at 463. (Emphasis added). It is interesting to note that, despite the references to the commencement of trial, the Court in *Rosenbach* focused on the postponement that resulted in a trial date beyond the 180 day limit, as the critical postponement, and relied upon *Frazier,* which, for the first time, and forcibly, defined the critical postponement. *See id.* at 478–80, 551 A.2d at 462-63. It also focused on *Bonev,* in its discussion of inordinate delay, in which there was a postponement subsequent to the critical one. *See id.* at 479, 551 A.2d at 463. Thus, *Rosenbach* is consistent with the *Hicks-Frazier Farinholt* line of cases.

In any event, the discussion of inordinate delay is dicta. As such, it does not establish a new test for compliance with § 591 and Rule 4-271, or, as that would require, overrule *Frazier* and *Farinholt.*

### b.

The cases decided since *Rosenbach, State v. Parker,* 347 Md. 533, 702 A.2d 217 (1995); *Dorsey v. State,* 349 Md. 688, 709 A.2d 1244 (1998); and *State v. Fisher,* 353 Md. 297, 726 A.2d 231(1999), do not remotely suggest, nor do they recognize, that *Rosenbach* changed the good cause test for postponement in any way or that any change in this Court's Rule 4-271 and § 591 jurisprudence was intended. Indeed, each reiterated, or recognized, what has been firmly established since *Hicks,* that the dismissal sanction applies only when to do so furthers the purpose of the prompt disposition of criminal cases in the circuit court. *See Parker,* 347 Md. at 540–41, 702 A.2d at 220; *Dorsey,* 349 Md. at 706, 709 A.2d at 1252–53; *Fisher,* 353 Md. at 305, 726 A.2d at 235.

In *Parker,* the defendant was arraigned in the Circuit Court for Anne Arundel County on December 14, 1992; thus the 180 day period, mandated by Rule 4-271, would expire on June 12, 1993. *See Parker,* 347 Md. at 535-36, 702 A.2d at 218. His case was scheduled for trial on March 30, 1993. *See id.* at 535,

702 A.2d at 218. That trial date was postponed by the administrative judge, however, because the defendant did not appear and a bench warrant for his arrest was issued. *See id.* The defendant was arrested on the warrant on May 12, 1993 and, thereafter, the State's Attorney rescheduled his trial for July 21, 1993. *See id.* On that date, the State's request for a one week continuance having previously been granted, the court heard argument on the defendant's motion to dismiss for violation of Rule 4–271. *See id.* Concluding that "Md.Rule 4–271 had been violated because the State, after Parker's arrest in mid-May, had not scheduled a trial date prior to the *Hicks* date or sought a good cause finding for scheduling a trial date thereafter," the circuit court dismissed the case. *Id.* at 536, 702 A.2d at 218. It did not address the length of delay from the date of the postponement to the rescheduled trial date, however. *See id.* We reversed the judgment of the Court of Special Appeals, which affirmed the judgment of the circuit court. *See id.*

Having identified the critical postponement as March 30, the date the defendant failed to appear for trial, because it was that postponement that carried the trial date beyond 180 days,[4] the Court explained:

"Because good cause existed for the March 30 postponement by the circuit administrative judge in the instant case, the only remaining question in applying the principles set forth above is that of inordinate delay. Judge Thieme refused to make a finding on this issue at the hearing on Parker's motion to dismiss, and the intermediate appellate court also did not address the issue. The indefinite postponement was granted on March 30, but Parker was not

---

4. The Court reasoned:

"The error made by both the Court of Special Appeals and the circuit administrative judge was reading Rule 4–271 as requiring a specific good cause finding prior to scheduling of the case beyond the 180-day limit. The scheduling of the case by the Office of the State's Attorney was not the action that required good cause—the March 30 postponement was."

*State v. Parker,* 347 Md. 533, 540, 702 A.2d 217, 220 (1995).

arrested until mid-May. Thereafter, counsel were engaged in efforts to resolve the case without a trial. Little more than two months passed between Parker's second arrest and the new trial date. As a matter of law, we hold that the delay in this case between the time the defendant was arrested after his failure to appear for the initial trial date and the time of his ultimate trial date was not inordinate." *Id.* at 541, 702 A.2d at 220–21. What is significant is that the Court's focus in *Parker* was on the postponement that resulted in a trial date beyond the 180 day limit and on the first trial date following that postponement. In *Parker*, as in *Rosenbach*, that trial date and the "ultimate date of trial" just happened to be the same.

The focus in *State v. Fisher* was identical to that in the aforementioned cases, but the major issue addressed, in *Fisher*, was whether the administrative judge was required to "expressly find and articulate good cause" when granting a postponement that results in a trial date beyond the 180 day limit. *See Fisher*, 353 Md. 297, 726 A.2d 231. As to the length of delay, the Court's primary concern was the period between the date of the postponement and the rescheduled trial date, as to which we observed that the defendant had "presented no reasons as to why the scheduling of the new trial date amounted to a clear abuse of discretion." *Id.* at 311, 726 A.2d at 238.

The Court of Special Appeals acknowledges that the State's argument—that the applicable period of delay for purposes of the length of delay component of the good cause determination is that between the critical postponement and the next scheduled trial date—is a reasonable interpretation of the case law; indeed, it concedes that *Farinholt* is supportive of that argument and that "[t]o date, the cases that have addressed the concept of inordinate delay have dealt with the length of delay between the critical postponement and the next scheduled trial date rather than a series of post*Hicks* postponements such as are at issue in this case." *Brown*, 124 Md.App. at 254, 721 A.2d at 273. Noting that the respondent was not tried until more than ten months after the date of the critical postpone-

ment, during which period, the case was called for trial and postponed seven times due to the unavailability of a judge, the intermediate appellate court concluded it was not foreclosed from considering, in this case, the length of the delay between the critical postponement and the ultimate trial date, reasoning:

> "While it is true that, after the December 12, 1996 postponement, appellant was given a trial date of February 18, 1997, that trial date apparently had no meaning whatsoever. The series of postponements in this case, for unavailability of a judge, was tantamount to not scheduling appellant's case at all until it finally was tried in October, 1997."

*Id.* at 256, 721 A.2d at 274.

We reject the Court of Special Appeals' approach. It runs afoul of our cases, as we have seen, as well as the rationale underlying the dismissal sanction, *see Hicks,* 285 Md. at 316–17, 403 A.2d at 359–60; *Frazier,* 298 Md. at 426–28, 470 A.2d at 1270–72; the dismissal sanction is intended to further the goal of the prompt disposal of criminal cases at the circuit court, applying it to postponements other than the critical one does not further that goal and, thus, is inappropriate. *See Farinholt,* 299 Md. at 41, 472 A.2d at 456. Very recently, this Court reiterated what we said quite forcibly in *Frazier* and *Goins* and have followed ever since, that the burden is on the defendant to establish either a clear abuse of discretion or a lack of good cause for postponement as a matter of law. *See Fisher,* 353 Md. at 306, 726 A.2d at 235 (quoting *Frazier,* 298 Md. at 454, 470 A.2d at 1286). If we were to follow the decision by the Court of Special Appeals in the case *sub judice,* we would have to overrule our cases, since the effect of its ruling is to shift the burden of proof from the defendant to the court.

## IV.

In summation, we reaffirm our holdings in the *Frazier* line of cases, that the critical postponement for purposes of Rule 4–271 is the one that carries the case beyond the 180

day deadline. It is that postponement to which a reviewing court looks, and, when deciding whether to dismiss a case for inordinate delay, it is the length of the delay between the postponed trial date and the rescheduled date that is significant. We repeat and emphasize that "[w]hile the rule was adopted to facilitate the prompt disposition of criminal cases, it stands on a different legal footing than the Sixth Amendment's constitutional right to a speedy trial," [5] *Hicks, supra,* 285 Md. at 320, 403 A.2d at 361–62, and our decision in no manner impairs any remedy the respondent may have pursuant to that right. The Court of Special Appeals tended to merge the respondent's remedies pursuant to the constitutional amendment and the rule, and in doing so, it erred.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT TO CONSIDER THE CONSTITUTIONAL ISSUES PRESENTED BY THE RESPONDENT. COSTS IN THIS COURT TO BE PAID BY THE RESPONDENT. COSTS IN THE COURT OF SPECIAL APPEALS TO ABIDE THE RESULT.*

---

5. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial. Similarly, Article 21 of the Maryland Declaration of Rights provides: [t]hat in all criminal prosecutions, every man hath a right ... to a speedy trial." *See also Epps v. State,* 276 Md. 96, 345 A.2d 62 (1975) (discussing the accused's right to a speedy trial pursuant to federal and state constitutional law principles); *see Jones v. State,* 241 Md. 599, 217 A.2d 367 (1966).